# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00674-CR

**Barry Lee Briggs, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. C1CCRO4666078, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant filed his notice of appeal on October 1, 2007. His brief was due January 7, 2008, but was never filed. This Court sent a late-brief notice to appellant's retained attorney, J. W. Howeth, but Mr. Howeth never responded. We then abated the appeal and asked that the trial court conduct a hearing to determine whether appellant wished to prosecute his appeal and whether Mr. Howeth had abandoned the appeal. *See* Tex. R. App. P. 38.8(b)(2), (3). The trial court held the requested hearing, and a reporter's record from that hearing was filed on October 10, 2008. The trial court stated at the hearing that Mr. Howeth was given notice of the hearing both by mail and by telephone messages but that neither appellant nor Mr. Howeth had appeared before the trial court. The trial court stated that "neither the defendant or the attorney wish to prosecute this appeal any longer" and "suggest[ed] that the appeal be abated, or abandoned, or dismissed . . .

because it does not appear that there's any intent, whatsoever, to prosecute an appeal of this case at this time."

Appellant and his attorney have not responded to our notices or filed any document disagreeing with the trial court's finding that the appeal has been abandoned.[1] We therefore may consider the appeal without a brief pursuant to rule 38.8(b)(4). *See* Tex. R. App. P. 38.8(b)(4) (appellant's failure to file brief does not allow appellate court to dismiss appeal; when no appellant's brief is filed and trial court determines that appellant no longer wishes to prosecute appeal, "appellate court may consider the appeal without briefs, as justice may require").

---

[1] Mr. Howeth has received copies of our various communications and received notice of the trial court's hearing but failed to appear at the hearing and has not responded to any of this Court's inquiries. The trial court clerk informed us that Mr. Howeth told the clerk that he had not heard from his client and was not going to take any further actions in this case. Although we recognize that this is hearsay and is not information received by us from Mr. Howeth directly, we have heard nothing from Mr. Howeth himself regarding this appeal since its inception.

As found by the trial court, appellant has apparently decided to abandon his appeal. By Mr. Howeth's failure to file a motion to dismiss stating his client's intentions, *see* Tex. R. App. P. 42.2(a), or indeed to communicate with this Court in any way, Mr. Howeth has needlessly caused the waste of valuable judicial resources by requiring us to review the record for error without the benefit of briefs, *see id.* R. 38.8(b), putting the trial court through the trouble of preparing the clerk's record and holding a hearing pursuant to rule 38.8(b), and requiring the court reporter to prepare and file records from the trial and from the rule 38.8(b) hearing. *See* Tex. R. Disciplinary P. 3.01-.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A-1 (West 2005) (lawyer shall not bring claims unless supported by non-frivolous basis, shall not take position that unreasonably increases burdens or delays resolution of case, owes duty of candor to courts, and shall not habitually violate rules of procedure). If appellant has not decided to abandon the appeal, Mr. Howeth has violated his duties to his client. *See* Tex. R. Disciplinary P. 1.01(b) (attorney shall not "neglect a legal matter entrusted" to attorney or "frequently fail to carry out completely the obligations" owed to client).

Appellant was charged by complaint with misdemeanor driving while intoxicated and driving with an open container. Appellant filed a pretrial motion to suppress evidence, arguing that the arresting officer lacked probable cause to detain appellant or subject him to sobriety tests.

At a pretrial hearing held in July 2004, Trooper David Dixon testified that between 8:00 and 9:00 p.m. on April 3, 2004, he saw a pickup truck stop on the side of the road and turn off its headlights. Dixon was concerned about the driver's welfare because the road was dangerous and, if the car had broken down, it was a three-mile walk to a gas station. Dixon said, "I didn't want him to get in an accident, or something, if someone hit him coming around the corner." Dixon drove up to the truck and turned on his "alley lights to see if he was okay," and he saw appellant "slumped over in the vehicle." Dixon asked if appellant was all right, and appellant answered that he stopped to go to the bathroom. Dixon testified that appellant's eyes were bloodshot and glassy and asked whether appellant had been drinking. Appellant answered that he had drunk two or three beers. Appellant provided his driver's license when asked, and Dixon then asked him to step out of the truck. Appellant was "unsure of himself as he was exiting. He had to use the door and the side of [his truck] for balance." Appellant told Dixon that he had taken pain killers earlier in the day. Dixon performed the HGN test and saw several of the test's signs of intoxication. He then asked appellant to perform a field sobriety test, and when appellant was unable to complete it, Dixon arrested him. After placing appellant under arrest, Dixon searched the truck and found two open cans and an open bottle of beer in the passenger compartment, an empty twelve-pack and a full twelve-pack elsewhere in the truck, and an empty can of beer in the bed of the truck.

The trial court concluded that the initial detention was reasonable because appellant was pulled off on the side of the road with his headlights off and Dixon had a reasonable concern about appellant's safety and the risk of an accident. The court held that Dixon developed reasonable suspicion through his contact with appellant and overruled appellant's motion to suppress.

Appellant waived his right to a jury trial and pled not guilty. At a bench trial in June 2007, Dixon provided essentially the same testimony, also testifying that appellant refused to give a breath sample when asked. Dixon also explained that the two cans and the bottle found in the passenger compartment were empty and cold to the touch. On cross-examination, Dixon explained that this area of road is known for criminal activity, such as drug activity, and that he approached appellant's truck because "it's not a very friendly spot to be stranded" and Dixon was "checking to see if [appellant] was okay." At the close of evidence, appellant again argued that Dixon lacked probable cause to approach appellant's car and that the stop was illegal. The trial court disagreed and found appellant guilty. The trial court convicted appellant of DWI and sentenced him to 120 days in jail, probated for two years, and a $2,000 fine, $1,500 of which was also probated. Appellant filed a motion for new trial, arguing that Dixon lacked probable cause to approach appellant's parked car in the first place and that the circumstances did not show a need for community caretaking.

Having reviewed the record and finding no reversible error, we affirm the trial court's judgment of conviction.

4

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:  December 3, 2008

Do Not Publish